UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA SENIOR<br><br>     *Plaintiff*,<br>-against-<br><br>VIACOMCBS INC.<br>     *Defendant.* | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### NATURE OF ACTION

1. Plaintiff Patricia Senior ("Senior" or "Plaintiff"), by her attorneys, Crumiller P.C., brings this action against ViacomCBS Inc. ("ViacomCBS" or "Defendant") to remedy race discrimination, national origin discrimination, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2. Senior, before coming to ViacomCBS, had excelled academically and in her work for other companies. At ViacomCBS, however, Senior was stereotyped as a "dumb Latina," prohibited from writing emails to her boss; consigned to doing clerical work and housekeeping, notwithstanding her having a Master of Business Administration from Columbia University; denied repeated requests for more challenging assignments; blocked from well-deserved professional advancement; subjected to unjust criticism; and, when she complained about the unrelenting discrimination, fired in retaliation.

3. As haunting as the hostile work environment that Senior experienced during her four years working at ViacomCBS, it was little different from the discrimination other Latinx employees faced at ViacomCBS. As with Senior, other ViacomCBS' Latinx employees were denied well-deserved promotions, passed over for professional opportunities, and made to do unskilled housework and menial work beneath their respective job titles.

## PARTIES

2. Plaintiff Patricia Senior is a non-White, Latinx woman residing in New York City. Senior was employed by ViacomCBS from on or about March 2016 until the termination of her employment in May 2020.

3. Defendant ViacomCBS is a corporation with its primary place of business located at 1515 Broadway, New York, NY 10036. ViacomCBS is a mass media conglomerate that operates more than 170 networks reaching 700 million subscribers both in the United States and internationally.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiff's State and City law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of New York pursuant to 29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to her claims of discrimination and retaliation occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On March 13, 2021, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

7. On September 28, 2021, the EEOC issued Plaintiff a Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

8. Senior grew up in Caracas, Venezuela. There, Senior excelled in school and in 2011, when 28 years old, she came to the United States to enroll in the MBA program at Columbia University Business School. Senior graduated in one and half years with an MBA in Retail and Marketing.

9. After graduating from Columbia Business School, Senior worked for three years as a Global Brand Manager for Toys "R" Us where she excelled and assumed increasing responsibilities.

10. In March 2016, Senior began working for ViacomCBS (then known as "Viacom"), as Director in Consumer Products Planning for Nickelodeon.

11. Senior's job description at ViacomCBS included overseeing the development, design, and execution of Consumer Products Marketing events and, among other responsibilities, leading a team in charge of managing logistics for key retail and industry shows.

12. Throughout Senior's entire employment at ViacomCBS, Senior Vice President ("SVP") Andrea Fasulo, a White, non-Latinx woman, led the Consumer Products Marketing team.

13. Directly reporting to Fasulo were three Vice Presidents, who each supervised at least one Director, one Manager, and one Coordinator.

14. In total, there were 16-18 people on the Consumer Products Marketing team at any given time.

15. In Plaintiff's role as Director, she reported to SVP Fasulo, VP Richard Morris, and Morris's successor, VP Cheryl Konieczko.

16. Latinx employees occupied the lowest position in the Consumer Products Marketing team hierarchy. Of the team's four Latinx employees, three had the team's lowest position, Coordinators, and only Senior held a higher position.

**Discriminatory Treatment and Hostile Work Environment**

17. Defendant's stereotyping of Senior as a "dumb Latina" began on her first day on the job.

18. On that first day, VP Morris, apparently presuming that Senior, being Latinx, was challenged in writing English, had her sit beside him while he dictated emails for her to send to SVP Fasulo and other executives.

19. Senior initially thought that Morris' insistence on dictating her emails was to teach her the particularized way emails were drafted at ViacomCBS. But she quickly realized that there was nothing special about ViacomCBS emails and that the perception that she needed help in writing was borne of prejudice about her being non-White and Latinx.

20. Roughly one month into the job, Fasulo became so enraged by minor grammatical mistakes or typos in some of Senior's emails (e.g., the word "what" was repeated and written twice in an email) that she forbade Plaintiff from writing to her directly.

21. In order to communicate with Fasulo, Senior was required to have Morris dictate the contents of any writings she sent to the SVP.

22. Other Consumer Products Marketing team members who sent emails with spelling and grammatical errors were not punished in the same way, if at all.

23. On information and belief, Senior was the only member of the Consumer Products Marketing team barred from drafting their own emails to and writing Fasulo directly.

4

24. At one point, Senior reminded Morris that English was her second language, to which he responded, Fasulo "doesn't care."

25. Senior was economically harmed by Fasulo's biased criticisms of her emails. Despite her superior performance, Senior received only a "Satisfactory" rating on her 2017 Annual Review, resulting in her earning lower bonus. When Senior asked Morris why she did not receive a better rating and a higher bonus, he replied that Fasulo felt that her emails contained too many "careless mistakes."

26. Although managing a simple Excel document of contacts invited to events was one of her job duties and something she knew well how to do, Morris required her to sit beside him to watch how to perform the task.

27. Fasulo ostracized Senior, excluding her from team meetings and outings; ignored her at major work events; and rarely acknowledged her presence even when Plaintiff was trying to speak to her.

28. Senior was repeatedly denied opportunities for professional advancement.

29. Senior consistently proposed new projects to work on and sought additional and more challenging responsibilities from her managers. Her managers, however, always rejected Senior's entreaties.

30. Instead, Fasulo regularly assigned Senior trivial "housework," such as packing boxes.

31. The assignments given Senior were appropriate for a Coordinator -- a position two levels below Plaintiff's Director title.

32. As a further example of Defendant's refusal to assign Director-level job responsibilities to Senior, at a two-day 2016 Partner Summit, she was consigned to fetching coffee and snacks for executives and presenters, causing her to feel deeply humiliated.

33. When Morris and other stakeholders held recap meetings after the 2016 Partner Summit, Senior was the only Consumer Products Marketing team Director not invited.

34. Consistent with ViacomCBS' treatment of Plaintiff as a lower-level employee, after a Manager (one level below Director) left the Consumer Products Marketing team in 2017, Senior was assigned all of the manager's lower-level job responsibilities.

35. Plaintiff performed these added responsibilities flawlessly. Defendant, however, neither acknowledged nor compensated Senior for performing another employee's job duties as well as her own.

36. The hostile work environment to which Senior was subjected persisted at ViacomCBS' 2017 Licensing Show in Las Vegas where she was excluded from the planning phase of the event, even though organizing the Licensing Show was supposed to be the biggest component of her responsibilities as a Director of Consumer Products Planning.

37. When Senior inquired why she was not invited to the planning meetings, Morris told her that the meetings were already too full and that only those at the VP level or above were invited.

38. Morris's articulated rationale for excluding Senior from the planning phase of the Licensing Show was pure fiction. Senior was aware of a number of people holding job titles below Director who were included in the planning process.

39. At the 2017 Licensing Show, Senior's role was confined to keeping lists and packing product boxes, although her job description called for her to oversee the development, design, and execution of product events.

40. In preparation for the 2018 Licensing Show, Morris informed Senior that she would be in charge of product inventory again because she had done "such a good job" packing boxes at the previous year's Licensing Show.

41. At the time of the 2018 Licensing Show, Senior was pregnant. On May 3, 2018, two days before giving birth to her son, Senior was packing, dragging, lifting, and shipping out boxes.

42. When Senior returned from maternity leave in August 2018, although she reported to a different VP, Cheryl Konieczko, she was made to do the same type of low-level clerical and menial tasks as before her leave.

43. In a telling remark made a few days after Plaintiff returned from maternity leave, VP Morris, upon observing her preparing boxes, asked Senior, "Aren't you glad you got that MBA?"

44. Fasulo's hostility toward Senior continued unremittingly.

45. In one instance, Fasulo asked Senior to present her with options for the promotion of a Nike hat, and then yelled at her when she gave her the exact information requested. Konieczko, who observed the interaction between Fasulo and Senior, was stunned by Fasulo's hostility toward Senior, and told the latter in words to the effect of, "I really don't know what happened and why she hates you so much. I hope we can fix that."

46. Konieczko tried persuading Fasulo to assign Senior more rewarding projects, but Fasulo always refused, and her abuse of Plaintiff remained unchanged.

7

47. In October 2019, when ViacomCBS hosted a three-day Global Offsite event for Consumer Products, every Director-level or above member of Fasulo's team, as well as within the division, was invited to the event. The sole exception was Senior who did not receive an invitation.

48. When Senior asked Konieczko if she could attend the Global Offsite event along with everyone else at her job level, she was told that the event would not be relevant to her role, which by this point, was limited to packing boxes and other menial tasks.

49. In November 2019, Senior applied for a Manager position in ViacomCBS's Toys team. Although Manager was one level below her Director position, Senior was willing to accept a demotion escape the unrelenting prejudice she experienced at her work environment. Konieczko told her that even if she were offered the job, Fasulo would likely block her from getting it.

50. In her 2019 review, Senior once again was given just a *"Satisfactory"* rating, and as a result, a reduced bonus. When Senior asked Konieczko why her performance was rated only *"Satisfactory,"* she was told it was for not "smiling enough" at that year's Licensing Show.

51. During the 2019 Licensing Show, Senior was pregnant with her second child but nonetheless was required to be on her feet for hours on end, welcoming attendees and guarding the door. Not only were these job duties grossly unsuited for someone in Senior's position, being pregnant, the worked caused her a great deal of pain and over-exhaustion.

52. "Not smiling enough" was the only feedback Senior received about her participation at the 2019 show and her performance for that entire year.

**ViacomCBS's Company-Wide Discrimination Against Latinx Employees**

8

53. As early as 2016, knowing that she was being discriminated against for being Latinx and non-White, Senior consulted with friends from SOMOS, ViacomCBS' Hispanic/Latinx employee resource group.

54. Other Latinx employees told Senior that they also were denied the same professional opportunities extended to White, non-Latinx employees, and instead, were given inferior, and often degrading, duties.

55. Half a dozen Latinx employees in other divisions told Senior they faced a hostile work environment and were repeatedly denied professional opportunities.

56. Two of Senior's Latinx colleagues in other divisions within ViacomCBS said that, like her, they were assigned "housework" and assistant-level job duties instead of substantive tasks more likely to lead to promotion.

57. Every Latinx employee on Fasulo's team reported feeling like they had been stuck in their role at ViacomCBS for years without receiving a promotion. As reported to Senior, Latinx employee were always kept out of the decision-making process, left uninformed by management, and made to do unskilled assignments, such as buying cakes and cards for birthdays, cleaning, or boxing and mailing inventory.

58. During Senior's four years at Viacom, every single person on Fasulo's team had been promoted at least once except for the Latinx employees.

59. For that same period of time, only four employees Consumer Products Marketing team members with the title of Director or below failed to receive a promotion. Of those four, three were Latinx women. The one non-Latinx employee denied a promotion, did not hold a bachelor's degree, while, as noted, Senior holds an MBA from Columbia Business School.

9

60. Only one Latinx employee under Fasulo received a promotion, that is, from Coordinator role to Manager. But the Latinx employee had to wait four and a half years before being promoted – and then, only after Fasulo's termination in mid-2020.

**Terminating Senior for Complaining about the Discrimination**

61. In December 2019, one week before taking her second maternity leave, Senior met with Jennifer Gordon, VP of Investigations and Employee Relations, to formally report the discrimination and hostile work environment that she was experiencing.

62. Among other things, Senior told Gordon that she was repeatedly excluded from professional opportunities and assigned trivial work simply because she was Latinx.

63. Senior also reported that Fasulo singled her out for abuse and treated her worse than her non-Latinx co-workers.

64. Gordon conducted a cursory investigation of Senior's discrimination claims, failing to interview any other Latinx employees working under Fasulo.

65. In February 2020, Gordon came back with the dubious finding that Senior had not been discriminated against.

66. Shortly thereafter, ViacomCBS undertook a retaliatory campaign against Senior for complaining about employment discrimination that culminated in her discharge.

67. Upon returning from maternity leave in March 2020, Senior learned that she had been completely removed from her biggest project—the annual Licensing Show.

68. This significant blow to her career did not stop Senior from repeatedly offering to collaborate on new projects. Senior even developed and proposed two new projects of her own – all to prove herself to company leadership

69. Konieczko instructed Senior to email the proposals to her, and not to Fasulo, evidently knowing that Fasulo would reject whatever proposal Senior made. Plaintiff did as instructed, and presented her proposals to Konieczko, but never heard back from her or any other ViacomCBS manager.

70. On May 27, 2020, Konieczko informed Senior that her position was being "eliminated" as part of Viacom's merger with CBS.

71. In truth, ViacomCBS fired Senior employment for complaining about the discriminatory work environment and for being Latinx and non-White.

72. ViacomCBS' discrimination and retaliation caused Senior to suffer severe emotional distress. Because of Defendant's abusive and unlawful actions, Senior has been diagnosed as having Persistent Depressive Disorder and Other Specified Trauma- and Stressor-Related Disorder.

73. Senior's symptoms as a result of her treatment at ViacomCBS include constant crying, weight gain, low energy, feelings of worthlessness, despair, self-doubt, and a markedly diminished interest in social and other activities.

## FIRST CAUSE OF ACTION:
### Discrimination in Violation of Title VII

74. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

75. ViacomCBS discriminated against Senior in the terms and conditions of her employment, including by, among things, blocking her advancement, degrading her role, and terminating her employment, on the basis of her national origin, in violation of Title VII.

76. ViacomCBS subjected Senior to a hostile work environment during her entire employment because of her national origin and race.

77. ViacomCBS' discriminatory acts caused Senior to suffer economic damages, including lost wages and benefits, as well as emotional distress damages.

78. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling senior to punitive damages.

79. ViacomCBS is liable to Senior for back pay, front pay, emotional distress and other compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

## SECOND CAUSE OF ACTION:
### Retaliation in Violation of Title VII

80. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

81. ViacomCBS unlawfully retaliated against Senior by, among other things, firing her, for complaining about Defendant's discrimination and hostile work environment, in violation of Title VII.

82. ViacomCBS' retaliation caused Senior to suffer economic damages, including lost wages and benefits, as well as emotional distress damages.

83. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling Senior to punitive damages.

84. ViacomCBS is liable to Senior for back pay, front pay, emotional distress and other compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

## THIRD CAUSE OF ACTION:
### Racial Discrimination in Violation of 42 U.S.C. § 1981

85. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

86. ViacomCBS discriminated against Senior in the terms and condition of her employment, by, among things, blocking her advancement, degrading her role, and terminating her employment on the basis of her race, in violation of 42 U.S.C. § 1981.

87. ViacomCBS subjected Senior to a hostile work environment during her entire employment because of her race.

88. ViacomCBS' discriminatory acts caused Senior to suffer economic damages, including lost wages and benefits, as well as emotional distress damages.

89. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling Senior to punitive damages.

90. ViacomCBS is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

## FOURTH CAUSE OF ACTION:
### Retaliation in Violation of 42 U.S.C. § 1981

91. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

92. ViacomCBS unlawfully retaliated against Senior by, among other things, firing her, for complaining about Defendant's racial discrimination, in violation of 42 U.S.C. § 1981.

93. ViacomCBS' retaliation caused Plaintiff to suffer economic damages, including lost wages and benefits, as well as emotional distress damages.

94. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

95. Therefore, ViacomCBS is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

## FIFTH CAUSE OF ACTION:
### Discrimination in Violation of the NYSHRL

96. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

97. ViacomCBS unlawfully discriminated against Senior in the terms and conditions of her employment, by among other things, blocking her advancement, degrading her role, and terminating her employment, on the basis of national origin and race, in violation of the NYSHRL.

98. ViacomCBS subjected Senior to a hostile work environment during her entire employment because of her national origin and race.

99. ViacomCBS' unlawful discriminatory acts caused Plaintiff to suffer economic damages, including lost wages and benefits, as well as emotional distress damages.

100. ViacomCBS acted willfully, with malice and/or reckless indifference to Senior's rights, entitling her to punitive damages.

101. ViacomCBS is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

## SIXTH CAUSE OF ACTION:
### Retaliation in Violation of NYSHRL

102. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

103. By the forgoing acts and omissions, including but not limited to Plaintiff's termination, ViacomCBS retaliated against Senior for complaining about discrimination, in violation of the NYSHRL.

104. ViacomCBS's unlawful retaliatory acts caused Senior to suffer lost wages, emotional distress, and other compensatory damages.

105. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiffs rights, entitling Senior to an award of punitive damages.

106. ViacomCBS is liable to Senior for back pay, front pay, emotional distress and other compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

### SEVENTH CAUSE OF ACTION:
### Discrimination in Violation of the NYCHRL

107. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

108. ViacomCBS unlawfully discriminated against Plaintiff in the terms and conditions of her employment on the basis of her national origin and race, by among other things blocking her advancement, degrading her role, and terminating her employment in violation of the NYCHRL.

109. ViacomCBS subjected Senior to a hostile work environment during her entire employment because of her national origin and race.

110. ViacomCBS' unlawful discriminatory acts caused Plaintiff to suffer economic damages, including lost wages and benefits, as well as emotional distress damages.

111. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

112. ViacomCBS is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

### EIGHTTH CAUSE OF ACTION:
### Retaliation in Violation of NYCHRL

113. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

114. By the forgoing acts and omissions, including but not limited to Plaintiff's termination, ViacomCBS retaliated against Senior for complaining about discrimination, in violation of the NYCHRL.

115. ViacomCBS' unlawful retaliatory acts caused Senior to suffer lost wages, emotional distress, and other compensatory damages.

116. ViacomCBS acted willfully, with malice and/or reckless indifference to Plaintiffs rights, entitling Plaintiff to an award of punitive damages.

117. ViacomCBS is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, cost, and disbursements.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment that:

a) declares that the discriminatory actions and practices by Defendant, as set forth above violated Title VII, 42 U.S.C. § 1981, NYSHRL, and NYCHRL;

b) declares that the retaliatory actions and practices of Defendant set forth above violated Title VII, 42 U.S.C. § 1981, NYSHRL, and NYCHRL;

    c)    awards monetary damages to Plaintiff to compensate her for the discrimination she experienced, including economic damages, and damages for emotional distress;

    d)    awards Plaintiff punitive damages;

    e)    awards Plaintiff reasonable attorneys' fees and costs; and

    f)    grants such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to FRCP § 38(b), Plaintiff demands a trial by jury.

Dated: Brooklyn, New York
       December 13, 2021

                              By:    /s/ *John A. Beranbaum*
                                       John A. Beranbaum
                                       Crumiller P.C.
                                       16 Court Street, 25th floor
                                       Brooklyn, NY 11241
                                       917-816-5956
                                       beranbaum@crumiller.com